IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

PHILIP SANCHEZ,

    Plaintiff,

v.                                                                                                  Civ. No. 16-923 SCY

NANCY A. BERRYHILL, Acting
Commissioner of the Social Security
Administration,

    Defendant.

## ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

**THIS MATTER** is before the Court on Plaintiff Philip Sanchez's Motion to Reverse and Remand the Social Security Commissioner's final decision denying Plaintiff period of disability and disability insurance benefits. Doc. 19. For the reasons discussed below, the Court will GRANT Plaintiff's motion and remand this action to the Commissioner for further proceedings consistent with this opinion.

    **I.**     **Background**

Plaintiff filed his claim on January 29, 2015 alleging disability due to diabetes, back problems, bad knees, hypertension, depression, neck problems, bone spurs, rotator cuff problems, muscle weakness, and memory problems. AR 59. Plaintiff alleged his disability onset date was August 17, 2014. AR 59. Plaintiff's claim was initially denied on May 21, 2015 and upon reconsideration on August 15, 2015. AR 13. Plaintiff thereafter requested a hearing which the ALJ held on February 3, 2016. AR 13. On March 23, 2016, the ALJ issued his decision denying Plaintiff's claim. AR 25. Because the parties are familiar with record in this case, the Court will only discuss Plaintiff's medical history to the extent that it is relevant to the issues before the Court.

Plaintiff's medical records show Plaintiff presenting to Dr. Aedra Andrade on numerous occasions throughout 2013-2015. AR 267-320. Although the main subjects of Plaintiff's visit were his diabetes and musculoskeletal pain, Dr. Andrade noted on numerous occasions Plaintiff's depressive disorder and "unspecified mental disorders." *See e.g.*, AR 267. On September 10, 2013, Dr. Andrade noted that Plaintiff was "still really battling depression, gets mad about everything, very irritable, getting hopeless and frustrated. Hasn't gone to [behavioral health services] due to lack of money for copay." AR 308. In January 2014 and December 2014, Dr. Andrade noted that Plaintiff was taking medication for his depression and that his depression had stabilized. AR 269, 303. However, in February and April of 2015, Dr. Andrade noted that Plaintiff had run out of depression medication and that his symptoms had returned. AR 313, 317.

On April 30, 2015, Plaintiff presented to Michael Emery, Ph.D. for a consultative psychology examination. Dr. Emery's report includes significant discussion of Plaintiff's history, specifically in regard to his depressive symptoms. Dr. Emery stated that he "suspect[ed] issues with both depression and anxiety pre-date[d] the health issues, most likely originating in childhood trauma." AR 339. Importantly, Dr. Emery opined that Plaintiff's "[s]ocial functioning is markedly impaired by interpersonal anxiety, panic episodes, and self-imposed isolation. General adaptation is markedly impaired." AR 339.

On May 21, 2015, non-examining, consultative physicians Dr. Lammer and Dr. Wewerka completed a medical assessment of claimant's impairments. AR 59-72. They indicated that Plaintiff had the following moderate limitations: (a) ability to maintain attention and concentration for extended periods of time, (b) ability to interact appropriately with the general public, and (c) ability to accept instructions and respond appropriately to criticism from supervisors. AR 68. Further, on August 15, 2015, non-examining, consultative physicians Dr.

Suansilppongse and Dr. Medina completed a medical assessment of Plaintiff. They found that he had the following moderate limitations: (a) ability to understand and remember detailed instructions, (b) ability to carry out detailed instructions, (c) ability to maintain attention and concentration for extended periods of time, (d) ability to complete a normal workday and workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods, (e) ability to interact appropriately with the general public, (f) ability to accept instruction and respond appropriately to criticism from supervisors, (g) ability to respond appropriately to changes in the workplace; and (h) ability to set realistic goals or make plans independently of others. AR 82-84.

In his decision, the ALJ gave Dr. Emery's opinions "limited weight." AR 23. The ALJ stated that although "his opinions on the claimant's abilities for cognition and concentration, persistence and pace are consistent with the evidence of record, his opinions that the claimant had marked limitations in social functioning and with general adaptation are based entirely on the claimant's self-report and are not supported by the overall record." AR 23.

**II.     Applicable Law**

**A.  Disability Determination Process**

A claimant is considered disabled for purposes of Social Security disability insurance benefits if that individual is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Commissioner has adopted a five-step sequential analysis to determine whether a person satisfies these statutory criteria. *See* 20 C.F.R. § 404.1520. The steps of the analysis are as follows:

(1) Claimant must establish that she is not currently engaged in "substantial gainful activity." If claimant is so engaged, she is not disabled and the analysis stops.

(2) Claimant must establish that she has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that has lasted for at least one year. If claimant is not so impaired, she is not disabled and the analysis stops.

(3) If claimant can establish that her impairment(s) are equivalent to a listed impairment that has already been determined to preclude substantial gainful activity, claimant is presumed disabled and the analysis stops.

(4) If, however, claimant's impairment(s) are not equivalent to a listed impairment, claimant must establish that the impairment(s) prevent her from doing her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* § 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work. Third, the ALJ determines whether, given claimant's RFC, claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled and the analysis stops.

(5) At this point, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work." If the Commissioner is unable to make that showing, claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 1520(a)(4); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

### B. Standard of Review

A court must affirm the denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Casias v. Sec'y of Health & Human Serv.*, 933 F.2d 799, 800-01 (10th Cir. 1991). In making these determinations, the reviewing court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008). For example, a court's disagreement with a decision is immaterial to the substantial evidence analysis. A decision is supported by substantial

evidence as long as it is supported by "relevant evidence . . . a reasonable mind might accept as adequate to support [the] conclusion." *Casias*, 933 F.3d at 800. While this requires more than a mere scintilla of evidence, *Casias*, 933 F.3d at 800, "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

Similarly, even if a court agrees with a decision to deny benefits, if the ALJ's reasons for the decision are improper or are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). As a baseline, the ALJ must support his or her findings with specific weighing of the evidence and "the record must demonstrate that the ALJ considered all of the evidence." *Id.* at 1009-10. This does not mean that an ALJ must discuss every piece of evidence in the record. But, it does require that the ALJ identify the evidence supporting the decision and discuss any probative and contradictory evidence that the ALJ is rejecting. *Id.* at 1010.

**III.   Analysis**

Plaintiff contends that the ALJ failed to appropriately account for Dr. Emery's opinion that Plaintiff has marked limitations in social functioning and general adaptation. Plaintiff contends that the ALJ's finding that Dr. Emery's opinions are "not supported by the overall record" is vague because he does not explain which portions of the record fail to support them. Plaintiff further contends that Dr. Emery's opinions were necessarily based on Plaintiff's self-reporting because that is the nature of psychological evaluations.

"It is the ALJ's duty to give consideration to all the medical opinions in the record. He must also discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d

5

1156, 1161 (10th Cir. 2012). The ALJ 's decision should generally ensure that that the discussion of the weight assigned to a medical opinion allows a subsequent reviewer to follow the ALJ's reasoning. *Nagelschneider v. Astrue*, 617 F.Supp.2d 1115, 1118 (D.Colo. 2009). An ALJ's failure to set forth adequate reasons as to why a medical opinion was assigned a particular weight may constitute reversible error. *Nagelschneider v. Astrue*, 617 F.Supp.2d 1115, 1118 (D.Colo. 2009).

Under the specific facts of the present case, the Court concludes that ALJ's reasoning fails to provide sufficient explanation as to why the he disregarded Dr. Emery's findings that Plaintiff is markedly impaired in social functioning and general adaptation. As for the ALJ's statement that Dr. Emery's opinions were based entirely on Plaintiff's self-report, the Court first notes that Dr. Emery's opinions concerned Plaintiff's mental limitations. As such, it is clear that such opinions will depend in large part on the Plaintiff's self-reports. As the Tenth Circuit has stated, "The practice of psychology is necessarily dependent, at least in part, on a patient's subjective statements." *Thomas v. Barnhart*, 147 Fed.App'x 755, 759 (10th Cir. 2005). Accordingly, a psychological opinion may rest on "observed signs and symptoms," which will generally include subjective reports by the claimant, in addition to objective psychological tests. *Id*. To discount a medical opinion because solely because it relies on a claimant's subjective reporting therefore risks substituting the ALJ's judgment for that of the psychologist.

Further, while Dr. Emery's report indicated extensive background information reported to him by Plaintiff, the Court's review of the report indicates that Dr. Emery's findings were not based "entirely" on Plaintiff's self-reports. Dr. Emery reviewed Plaintiff's medical records from Dr. Andrade and performed cognition tests in which Dr. Emery could observe Plaintiff for signs symptoms consistent with Dr. Andrade's diagnosis of depressive disorder. Similarly, having met

6

with Plaintiff, Dr. Emery had the opportunity to independently observe Plaintiff for indications of limited social functioning. Although the Court recognizes that opinions based solely on an individual's self-reported symptoms may justify according less weight to such opinions, *see Rivera v. Colvin*, 629 Fed. App'x 842 (10th Cir. 2015), the ALJ's finding on this point is inconsistent with the record.

Second, the ALJ's reasoning that Dr. Emery's opinions were inconsistent with the overall record fails to adequately explain which portions of the record justify such a finding. *See Hamlin v. Barnhart*, 365 F.3d 1208, 1217 (10th Cir. 2004) (concluding that the ALJ did not adequately explain his reasoning where the ALJ found a physician's opinion inconsistent with the record but did not specifically highlight those portions of the record with which it was allegedly inconsistent). First, the Court finds no conflict with Dr. Emery's and Dr. Andrade's opinions. In fact, the ALJ gave "great weight" to the opinions of Dr. Andrade and, consistent with Dr. Andrade's opinions, Dr. Emery found that Plaintiff suffered from depressive disorder and that his health issues exacerbated his mental impairments. AR 294, 339. Further, while there is some inconsistency between the limitations found by Dr. Emery and the non-examining consultative physicians, this discrepancy underscores the necessity for the ALJ to adequately explain his reasoning. Dr. Emery was an examining physician which means that, generally, his opinions should be given more weight than a non-examining physician. *See Rivera*, 629 Fed. App'x at 845; *Thomas*, 147 Fed. App'x at 760 ("[A] consulting, examining physician's testimony is normally supposed to be given more weight than a consulting, non-examining physician's opinion."). Thus, to the extent that a conflict existed between those opinions, the ALJ was required to explain why he disregarded an examining consultant's opinion in favor of medical opinions by non-examining consultant's that are ordinarily due less weight. In such

7

circumstances, a general statement that Dr. Emery's opinions were merely inconsistent with the record will not do, especially where there is no other conflict in the record regarding Dr. Emery's opinions. *See Thomas*, 147 Fed. App'x at 760 ("[I]f there is a conflict between non-examining and examining consultant's opinions, the ALJ must give adequate reasons if she…rejects the latter in favor of the former.").

In sum, the ALJ's conclusory reasoning for according Dr. Emery's opinions limited weight do not allow this Court to meaningfully review the bases for his decision.

**IV.    Conclusion**

For the foregoing reasons, the Court GRANTS Plaintiff's Motion to Reverse and Remand (Doc. 19) is GRANTED.

_____
UNITED STATES MAGISTRATE JUDGE